UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WELLS FARGO EQUIPMENT FINANCE, INC. | CIVIL ACTION NO. 6:16-CV-00583 |
| VERSUS | JUDGE JAMES |
| LOUISIANA CRANE & CONSTRUCTION, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Currently pending is the motion for partial summary judgment (Rec. Doc. 42), which was filed by the plaintiff, Wells Fargo Equipment Finance, Inc. The motion is opposed. (Rec. Doc. 54). The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be DENIED.

### BACKGROUND

In this lawsuit, the plaintiff seeks to recover sums allegedly owed by the defendants under two commercial loan agreements. One of the defendants, Louisiana Crane & Construction, L.L.C., sought bankruptcy protection (Rec. Doc. 27), and the plaintiff's claim against Louisiana Crane was stayed. The plaintiff's claim is

proceeding against the other three defendants – Logan C. Fournerat, Louisiana Liquid Services, L.L.C., and Joseph E. Toups.

There is no dispute concerning the following facts:

On January 14, 2013, Louisiana Crane borrowed the sum of $795,928.48 from Wells Fargo pursuant to the "Combination Loan and Security Agreement" referred to by the parties as the "703 Loan and Security Agreement." The face of the agreement indicates that the sum of $722,498.78 was actually disbursed. Joseph E. Toups and Logan C. Fournerat guaranteed Louisiana Crane's obligations under the 703 Loan and Security Agreement. The terms of the 703 Loan and Security Agreement provided for the payment of forty-two monthly payments of $18,959.44. To secure the payment of the amount owed, Louisiana Crane granted security interests in nine pieces of equipment to Wells Fargo. This equipment was described in Wells Fargo's briefing as Mack Truck #6, Mack Truck #7, Mack Truck #8, Mack Truck #9, Mack Truck #10, Mack Truck #11, Mack Truck #12, and Mack Truck #13. Only thirty-one payments were actually made, the first on February 28, 2013, and the thirty-first on August 28, 2015. An additional payment of $10,000 was made on February 24, 2016.

On February 27, 2013, Louisiana Liquid borrowed $716,240.16 from Wells Fargo pursuant to the "Combination Loan and Security Agreement" referred to by the

parties as the "700 Loan and Security Agreement." The face of the agreement indicates that the sum of $641,613.40 was actually disbursed. Louisiana Crane, Joseph E. Toups, and Logan C. Fournerat guaranteed Louisiana Liquid's obligations under the 700 Loan and Security Agreement. The terms of the 700 Loan and Security Agreement provided for the payment of forty-eight monthly payments of $14,921.67. To secure the payment of the amount owed, Louisiana Liquid granted security interests in nine pieces of equipment to Wells Fargo. This equipment was described in Wells Fargo's briefing as Mack Truck #1, Trailer to Mack Truck #1, Mack Truck #2, Trailer to Mack Truck #2, Mack Truck #3, Trailer to Mack Truck #3, Mack Truck #4, Mack Truck #5, and Trailer to Mack Truck #5. Only thirty consecutive monthly payments were actually made, the first on April 8, 2013 and the thirtieth on September 7, 2015.

Both agreements stated that the annual interest rate used in computing the payment schedules was 5.5%. Both agreements stated that if any installment was not paid within ten days of its due date, Wells Fargo "may impose a late charge of up to 5% of the amount of the installment but in any event not more than permitted by applicable law." Both agreements defined the term "event of default" to mean "default in the payment, within ten (10) days of when due, of any payment of principal or interest on the Loan. . . ." Both agreements stated that interest was to be

calculated from the date of an event of default at a rate equal to the lesser of 12% per annum or the highest rate permitted by law. Both agreements stated that legal fees and expenses incurred in the exercise of any right or remedy under the agreements may be recovered by Wells Fargo from the debtor.

On June 27, 2016, Louisiana Crane filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. In connection with the bankruptcy case, Louisiana Crane sold certain equipment that served as collateral for the loans. As a result of that sale, Wells Fargo received net proceeds in the amount of $237,680.00 that was applied against the amounts owed under the loans. In August 2016, Louisiana Liquid voluntarily surrendered to Wells Fargo certain equipment that served as collateral for the 700 Loan and Security Agreement. That equipment was sold at auction, and auction proceeds of $92,296.87 were paid to Wells Fargo and applied against the amount owed on the loans.

In its motion for partial summary judgment (Rec. Doc. 42), Wells Fargo seeks to recover against Louisiana Liquid, Fournerat, and Toups in the amount of $217,128.07 plus interest, attorneys' fees, and costs (Rec. Doc. 42-1 at 13-14). The defendants maintain, however, that genuinely disputed issues of material fact preclude the entry of summary judgment in the plaintiff's favor.

## LAW AND ANALYSIS

**A.    THE STANDARD FOR RESOLVING A MOTION FOR SUMMARY JUDGMENT**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

**B.   GENUINE DISPUTES CONCERNING MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT IN THE PLAINTIFF'S FAVOR**

   a.   **Wells Fargo's calculations lack factual support**

Wells Fargo submitted calculations in an attempt to establish the total amount due on the loans. But insufficient facts were submitted in support of its calculations.

First, Wells Fargo provided the following calculation of the amount due on the 703 Loan:

---

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

| | |
|---|---:|
| Principal due on the 703 Loan (as of April 28, 2016) | $199,518.37 |
| Interest | +.3,749.28 |
| Late fees | +.8,527.68 |
| Pre-petition attorneys' fees and costs | + 12,209.62 |
| Sub-total | 224,004.95 |
| Amount recovered through sales of equipment | - 237,680.00 |
| Surplus that was applied to the 700 Loan | $13,855.05 |

Wells Fargo provided no explanation for how it calculated the $3,749.28 interest or the $8,527.68 late fee. Similarly, there is no explanation or documentation supporting Wells Fargo's claim that $12,209.62 in pre-petition attorneys' fees and costs were incurred. Finally, although this calculation indicates that the full amount owed on the 703 Loan was recovered through the sale of secured equipment, resulting in a surplus of $13,855.05 that was applied against the 700 Loan, Wells Fargo nevertheless argued that a late fee of $1,895.04 remains owed with regard to the 703 Loan. Wells Fargo provided no explanation for the origin of that alleged late fee or the basis on which it was calculated. Therefore, the numbers supplied by Wells Fargo with regard to the amount owed on the 703 Loan are not sufficiently reliable to permit

the court to enter judgment in Wells Fargo's favor. To the contrary, there are genuine factual disputes concerning Wells Fargo's calculations.

Second, Wells Fargo provided the following calculation of the amount due on the 700 Loan:

| | |
|---|---:|
| Principal due on the 700 Loan (as of April 28, 2016) | $203,785.50 |
| Interest | +.2,084.25 |
| Late fees | +.9,484.23 |
| Expenses | + 15,629.14 |
| Sub-total | 230,983.12 |
| Surplus on the 703 Loan | - 13,855.05 |
| Total | $217,128.07 |

Again, there is no explanation for how the $2,084.25 in interest or the $9,484.23 in late fees was calculated. It is unclear whether the $9,484.23 in late fees shown in this calculation includes the $1,895.04 in late fees that Wells Fargo contends remains owing on the 703 Loan. Most important, the total amount owed on this loan is dependent upon an accurate calculation on the 703 Loan; as noted above, however, Wells Fargo's calculation of the amount due on the 703 Loan is not reliable.

Accordingly, this Court finds that there is a genuine issue of factual dispute concerning the amount due on both loans.

### b. The bankruptcy proceeding

According to information supplied by the defendants, Louisiana Crane's bankruptcy proceeding is ongoing and was set for confirmation on July 21, 2017, and the defendants anticipated that Wells Fargo was going to recoup additional sums under the bankruptcy plan. Because Wells Fargo will not be able to recover from the guarantors in this action the sums paid on the principal obligations by Louisiana Crane through the bankruptcy proceeding, it would be inappropriate to grant the plaintiff's motion before the bankruptcy proceeding has concluded.

### c. Whether the sale of collateral was commercially reasonable

The defendants argued that a genuine issue of material fact exists because, under Louisiana's version of the UCC, it is presumed that the sale of collateral securing an obligation fully satisfies and consequently extinguishes that obligation and the only way to overcome that presumption is to prove that the sale was conducted in a commercially reasonable manner. As the creditor, Wells Fargo must bear that burden. The defendants argued that Wells Fargo failed to prove that the sale of collateral securing the loans at issue in this lawsuit were conducted in a commercially reasonable manner. Having already found that Wells Fargo has not

established the amount due under the loans and that this motion should not be resolved prior to the conclusion of the bankruptcy proceeding for Louisiana Crane, further discussion of this issue is pretermitted.

## CONCLUSION

For the foregoing reasons, this Court finds that a genuine issue of material fact exists with regard to the amount owed under the subject loans. Accordingly,

IT IS RECOMMENDED that the plaintiff's motion for partial summary judgment (Rec. Doc. 42) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on August 7, 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE